IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| KASHIF BHATTI, <br><br> Plaintiff, <br><br><br> vs. <br><br><br> PROVIDENT FUNDING ASSOCIATES, L.P., a limited parternship company <br><br> Defendant, | MEMORANDUM OPINION AND ORDER <br><br><br><br><br><br> Case No. 2:11cv1149 |

This matter is before the court on the motion for summary judgment filed by defendant Provident Funding Associates, L.P. ("Provident") on March 30, 2013. (Dkt. No. 30, Def.'s Mot. for Summ. J.) A hearing on the motion was held on June 3, 2013. Provident was represented by D. Craig Parry and Gil A. Abramson. Plaintiff Kashif Bhatti was represented by Kenneth Parkinson. Before the hearing, the court considered briefs and memoranda submitted by the parties. Since taking the motion under advisement, the court has further considered the law and facts relating to the motion. Now, being fully advised, the court issues the following Memorandum Opinion and Order.

1

## BACKGROUND

Provident is a nationwide wholesale mortgage company. Plaintiff, who is of Pakistani national origin and East Indian descent, began working for defendant as an underwiter in defendant's Salt Lake City office on April 23, 2007.  Plaintiff was an "at-will" employee of Provident. (Def.'s Mot. for Summ. J., Exh. 5, Provident Human Resources Policies and Procedures at 1.) Plaintiff received extensive training and orientation when his employment commenced.  As part of his orientation, he received and reviewed with his supervisor Provident's Equal Opportunity Policy, which set forth Provident's harassment reporting policy and the procedure for reporting and resolving complaints. (Def.'s Mot. for Summ. J., Exh. 3, Batthi Depo at 58:25-59:2, 59:20-60:13 & Exh. 4, Employee Orientation Acknowledgment of Policies). Plaintiff worked for Provident through May 15, 2008, when Provident terminated plaintiff's employment.

### Plaintiff's Employment History at Provident

Plaintiff's term of employment was marked by poor performance and incidents of insubordination. Early on in plaintiff's employment, Provident sent plaintiff to California for a two-week training course to learn the necessary skills to be an underwriter.  Following the course, plaintiff's trainer, Joseph M. Smith, wrote plaintiff's supervisor, Diane Patterick, a letter expressing his concern regarding plaintiff's ability to be a successful underwriter. Mr. Smith wrote that unless plaintiff displayed a "drastic turn around," plaintiff would "have a lot of trouble surviving" in the Salt Lake City office. (Def.'s Mot. for Summ. J., Exh. 7, Smith Letter.) Mr. Smith stated that plaintiff was "not able to retain a majority of the information" he was taught and that his level of "efficiency [was] nowhere near where it need[ed] to be." (Id.) Furthermore,

Mr. Smith reported that plaintiff's work was full of errors, stating that "his files have been an absolute mess." (Id.)

Following this training course, plaintiff was paired with a more experienced underwriter in the hope that the senior underwriter could help plaintiff improve. Nevertheless, plaintiff's employment record indicates that his work ethic and production levels remained poor throughout his employment. (Def.'s Mot. for Summ. J., Exh. 6, Patterick Depo. at 60:4-62:10.) Indeed, plaintiff's low productivity continued to be a topic of concern in April of 2008—nearly a full year into plaintiff's employment. (Def.'s Mot. for Summ. J., Exh. 3, Bhatti Depo. at 80:4-12 & Exh. 16, Patterick Notes 4/9/08.) Plaintiff's performance was unsatisfactory enough that Ms. Patterick was compelled to discuss plaintiff's professional shortcomings with him shortly before his first annual review. (Id.)

The final month of plaintiff's employment was marked by three events which culminated in Provident's decision to terminate his employment.

First, on April 17, 2008, plaintiff committed a serious auditing error. (Def.'s Mot. for Summ. J., Exh. 3, Bhatti Depo. at 83:15-19 & Exh. 6, Patterick Depo. at 67:4-24.)

Second, a few days later, plaintiff was verbally reprimanded for failing to stop working on his computer during a company-wide conference call with Provident's Vice President, Lori Pica, despite explicit instructions to give Ms. Pica his undivided attention and cease all other work during the call. (Def.'s Mot. for Summ. J., Exh. 3, Bhatti Depo. at 95:19-22, 23-25; 96:1-4 & Exh. 9, Bateman Depo. at 44:13-45:16.)

Third, on April 28, 2008, Bhatti sent an email to the president of Provident in which plaintiff indicated that he would be filing a complaint of discriminatory treatment against

Provident and, in particular, Ms. Patterick. (Def.'s Mot. for Summ. J., Exh. 19 at Request for Admission 5.)  The email did not provide any particular allegations or facts to support them. Rather it listed the following allegations in a conclusory fashion: "inappropriate and targeted discriminatory harassment, inappropriate racial/ethnic remarks, inappropriate, rude, derogatory and sexually explicit language, blatant intimidation, falsification of records, dishonest and unethical work practices, inappropriate management tactics (humiliation, intimidation, indifference, fear, etc.), and inappropriate disciplinary tactics (discipline out of proportion with wrongdoing, etc.)." (Def.s Mot. for Summ. J., Exh. 20, Plaintiff's Email 4/28/08.) Plaintiff's email fell short of Provident's requirements for lodging harassment complaints as set forth in Provident's Human Resources Policies and Procedures reviewed by the plaintiff at the beginning of his employment. Provident's policy states that a written complaint, such as that submitted by the plaintiff, "should include details of the incident or incidents, names of the individuals involved and names of any witnesses." (Def.'s Mot. for Summ. J., Exh. 5, Provident Human Resources Policies and Procedures at 4.)

Provident sought to immediately follow up on plaintiff's email, responding with an email sent the same day attempting to schedule a time during which the vice president, Ms. Pica, could speak with plaintiff about the alleged discriminatory treatment. (Def.'s Mot. for Summ. J., Exh. 19, Request for Admission No. 9.) However, plaintiff refused to speak with Ms. Pica until he could do so while accompanied by a "representative." (Id.) Provident's harassment policy has no provisions ensuring the presence of a representative during an internal company investigation. (Def.'s Mot. for Summ. J., Exh. 5, Provident Human Resources Policies and Procedures.)  On May 1, 2008, Ms. Pica and Provident's Human Resource Manager, Heather Bogle, traveled from

California to visit the Salt Lake City office to investigate plaintiff's general complaints alleged in his email to Provident's president. The swift investigatory response of Mss. Pica and Bogle was in accordance with Provident's Human Resources Policies and Procedures, which provide that following the receipt of a harassment complaint, the company "will immediately undertake an effective, thorough and objective investigation of the harassment allegations." (Id.) Mss. Pica and Bogle held one-on-one meetings with the staff, including Ms. Patterick and plaintiff, in which they asked each person whether they had ever witnessed or been a party to the behavior generally alleged by the plaintiff in his email to the president of Provident. While plaintiff refused to speak with Mss. Pica and Bogle because he did not want to discuss the incident without a representative, all of the other employees were cooperative. (Def.'s Mot. for Summ. J., Exh. 1, Pica Depo. at 75:23-25, 76:1-20 & Exh. 19, Request for Admission No. 12.) The employees interviewed reported that they heard Ms. Patterick reprimanding plaintiff from her office behind closed doors after he failed to stop working during the conference call. However, that was the only interaction of any significance recalled by the interviewed employees. No employee reported any inappropriate conduct or conduct that could be construed as harassment on the basis of race, color, or national origin. (Def.'s Mot. for Summ. J., Exh. 1, Pica Depo. at 91:4-92:10, 93:5-18.)

  Provident ultimately terminated plaintiff on May 5, 2008. Provident cited plaintiff's poor performance, excessive work quality issues, the serious audit error, inability to grasp concepts, declining productivity, and insubordination as contributing factors to plaintiff's termination. Provident also cited plaintiff's refusal to cooperate with the investigation into his allegations and the determination that his allegations were baseless as additional contributing factors to the

decision to terminate plaintiff. (Def.'s Mot. for Summ. J., Exh. 21, Discharge Notices & Exh. 1, Pica Depo. at 105:14-18.)

### Plaintiff's Allegations of Discrimination Underlying the Complaint

After his termination, plaintiff articulated his allegations of discriminatory behavior more specifically. The following factual allegations, taken in the light most favorable to the plaintiff, form the basis of plaintiff's claims of discriminatory treatment.

On multiple occasions plaintiff's supervisor, Ms. Patterick, yelled at plaintiff in front of the entire office and demanded explanations as to why his production numbers were down. (Def.'s Mot. for Summ. J., Exh. 18, Pl.'s Answer to Interrog. No. 19 & Exh. 3, Bhatti Depo. at 23:22-24.) Plaintiff was also verbally reprimanded for failing to stop working during the conference call with Ms. Pica. (Def.'s Mot. for Summ. J., Exh. 6, Patterick Depo. at 82:5-24.)

Immediately prior to being diagnosed with carpal tunnel syndrome, plaintiff complained of wrist pain to Ms. Patterick. Ms. Patterick ignored his complaint, not even looking away from her computer when he told her of his pain. (Def.'s Mot. for Summ. J., Exh. 18, Pl.'s Answer to Interrog. No. 19 & Exh. 3, Bhatti Depo. at 30:15-31:5.)

Plaintiff was engaged in what he felt was an offensive conversation with Ms. Patterick after he returned from a lunch break in which he ate aromatic Indian food. According to Ms. Patterick, they were discussing cooking with spices. Plaintiff however, does not recall this part of the conversation. (Dkt. No. 33, Pl.'s Mem. in Opp'n to Summ. J., Exh. 1, Bhatti Depo. 132:4-11, 22-44.) Plaintiff only recalls being told by Ms. Patterick, in front of other personnel, that he stank and that she did not like the smell of him. (Id. at 133: 10-25.)

Plaintiff was engaged in another discussion with Ms. Patterick, which he deemed

6

offensive, in July 2007. In the conversation, plaintiff described certain lifestyle and cultural differences between his home country of Pakistan and the United states. Patterick reports that she expressed her opinion that the way women were treated in Pakistani culture was "unfathomable" to her. (Def.'s Mot. for Summ. J, Exh. 6, Patterick Depo. at 99:1-16.) Plaintiff does not recall hearing Ms. Patterick use the word unfathomable. Rather he recalls that she spoke of how she felt that men treated women poorly in Pakistan and how awful the submissive lifestyle must be for Pakistani women. (Pl.'s Mem. in Opp'n to Mot. to Summ. J., Exh. 1, Bhatti Depo. at 115:17-117:14 & Exh. 5, Pl.'s Answer to Interrog. No. 20.)

Plaintiff also a considered a story relayed to him by Ms. Patterick in the break room to be offensive. The story involved Ms. Patterick's grandmother, who called the front desk of a hotel where she was staying to ask for towels. When the towels were delivered by a man with darker skin, Ms. Patterick's grandmother would not open the door to her room for him. Plaintiff considered this story to be discriminatory and offensive.

During plaintiff's employment, Provident barred a mortgage loan agent of Pakistani national origin named Irfan Ali from sending loans to Provident upon a determination that he had been "churning borrowers."[1] Later, Provident determined that Mr. Ali was still submitting loans under the name of another Pakistani mortgage loan agent named Abrar Hussein. Ms. Patterick severed business ties with the two loan agents. Although Mr. Ali told plaintiff that he did not believe that Ms. Patterick was racist, plaintiff raises Provident's interaction with Mr. Ali and Mr.

---

[1]The phrase "churning borrowers" refers to the practice of refinancing the same borrowers by a mortgage loan agent repeatedly for his own personal gain. (Def.'s Mot. for Summ. J. at 19.)

Hussein in his complaint as proof of a pattern of discrimination. (Def.'s Mot. for Summ. J., Exh. 10, Ali Depo. at 38:7-17, 40:2-16; Dkt. No. 2, Compl. at ¶39.)

**Procedural History**

As mentioned above, plaintiff was terminated on May 5, 2008. Plaintiff filed a charge with the Utah Antidiscrimination and Labor division ("UALD") on August 13, 2008 in which he—seemingly for the first time—articulated his complaints more specifically than he did in his email to Provident's president. (Compl. at ¶ 17; Pl.'s Mem. in Opp'n. to Mot. for Summ. J., Exh. 4, Discrimination Complaint.) The EEOC issued a Notice of Right to Sue on September 22, 2011. (Id. at ¶ 8.) Plaintiff filed this complaint against Provident on December 12, 2011. (See Compl.) Provident subsequently filed this motion for summary judgment against all three of plaintiff's claims: (1) hostile work environment,[2] (2) disparate treatment, and (3) retaliation.

## DISCUSSION

When considering motions for summary judgment, inferences from the underlying facts are to be drawn in the light most favorable to the plaintiff. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). Doing so, the court finds that Provident's motion for summary judgment should be granted in its entirety.

**I. Hostile Work Environment**

The conduct that forms the basis of plaintiff's complaint fails to support a hostile work

---

[2]It is unclear whether the claim for hostile work environment is properly before the court because it was not raised in the complaint. However, both parties have thoroughly addressed the claim in their briefing on this motion for summary judgment. Because both parties seem to agree that it is a valid claim, the court considers it as if it appeared in the complaint.

environment claim. A hostile work environment claim requires a showing of harassment that, under the totality of circumstances, (1) was racial or stemmed from racial animus; and (2) was pervasive or severe enough to alter the terms, conditions, or privileges of employment. Chavez v. New Mexico, 397 F.3d 826, 832 (10th Cir. 2005).

**1. The Alleged Harassment Was Not Racial and Did Not Stem from Racial Animus**

Even viewing the facts in the light most favorable to the plaintiff, the court finds that the conduct which plaintiff identifies as harassment was not race-based. Instead, the alleged harassing conduct was benign and neutral with respect to race, color, and natural origin.

In making a determination considering a hostile work environment claim, the court "consider[s] the work atmosphere both objectively and subjectively, looking at all the circumstances from the perspective of a reasonable person in the plaintiff's position." Tandemy v. Union Pacific Corp., 614 F.3d 1132, 1144 (10th Cir. 2008) (quoting Herrera v. Lufkin Indus., Inc., 474 F.3d 675, 680 (10th Cir. 2007)). The allegations that Patterick yelled at plaintiff about his productivity, yelled at him for continuing to work during the conference call with Ms. Pica, and ignored his complaint of wrist pain lack any indication that the offensive actions stemmed from a racial animus. Similarly, the allegation that Ms. Patterick cut off business relations with two Pakistani brokers has nothing to do with plaintiff or the national origin he shared with the two lenders. The remaining allegations —Ms. Patterick's story about her grandmother's fear of a "dark-skinned man" at a hotel, Ms. Patterick's opinion that the treatment of women in Pakistan is objectionable, and Ms. Patterick's alleged statement that plaintiff "stank"— are all insufficient to qualify as being racial within the meaning of a claim of a hostile work environment. Plaintiff's subjective belief that these actions were race-based is not sufficient to support a hostile work

environment claim. The court, having considered this accumulation of factual assertions in the light most favorable to the plaintiff, concludes that a reasonable person would not find that plaintiff's work environment was hostile or abusive.

### 2. The Alleged Harassment Was Not So Severe or Pervasive as to Alter the Terms and Conditions of Plaintiff's Employment

For a plaintiff to survive summary judgment on a hostile work environment claim, he "must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." Sandoval v. City of Boulder, 388 F.3d 1312, 1326-27 (10th Cir. 2004). Such a hostile work environment cannot be established "by demonstrating a few isolated incidents of racial enmity or sporadic racial slurs," but rather by demonstrating "a steady barrage of opprobious racial comments." Herrera at 474 F.3d at 680.

When viewing the complained-of conduct mentioned above in the light most favorable to the plaintiff, the court finds that it is not sufficient to support a hostile work environment claim. The court has already expressed its holding that a reasonable person would not find that the complained-of conduct stemmed from a racial animus. However, even if a reasonable jury thought that some of the alleged conduct did stem from a racial animus, a hostile work environment claim cannot be supported by "a few isolated incidents of racial enmity or sporadic slurs." Herrera at 474 F.3d at 680. The requisite "steady barrage of opprobious racial comments" is simply not present in the conduct about which the plaintiff complains. No reasonable employee would consider the complained-of conduct sufficiently severe or pervasive as to alter the conditions of employment and create a hostile work environment. Therefore, Provident's

motion for summary judgment should be granted as to the hostile work environment claim.

## II. DISPARATE TREATMENT

In a discrimination case under a disparate treatment theory, the plaintiff bears the burden of establishing a prima facie case of discrimination pursuant to the burden shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See Young v. Dillon Companies, Inc., 469 F.3d 1243, 1249-50 (10th Cir. 2006). In order to establish a prima facie case of discrimination, a plaintiff must demonstrate that (1) he belongs to a protected class, (2) he suffered an adverse employment action, and (3) the challenged action took place under circumstances giving rise to an inference of discrimination. EEOC v. PVNF, LLC, 487 F.3d 790, 800 (10th Cir. 2007). If the plaintiff meets this burden, the burden shifts to the defendant, Provident, which must articulate a legitimate, nondiscriminatory reason for the adverse employment action. Mickelson v. N.Y. Life Ins. Co., 460 F.3d 1304, 1311 (10th Cir. 2006). If the defendant satisfies this burden, the burden shifts once again to the plaintiff, who must show that the defendant's proffered justification is simply pretext for unlawful discrimination. The plaintiff must accomplish this by showing "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions" in the proffered justification "that a reasonable factfinder could rationally find [it] unworthy of credence." EEOC v. PVNF, LLC, 487 F.3d at 801 (quoting Green v. New Mexico, 420 F.3d 1189, 1196 (10th Cir. 2005)).

The court finds that plaintiff fails to establish a prima facie case. Furthermore, even if plaintiff could establish a prima facie case, no reasonable jury would find defendant's reasons for terminating plaintiff to be a pretext for unlawful discrimination.

**1. Plaintiff Fails to Carry Its Burden in Making a Discrimination Claim Based on**

### His Termination

Plaintiff cannot establish a prima facie case of discriminatory discharge because he cannot establish that his termination occurred in circumstances giving rise to an inference of discrimination. It is undisputed that plaintiff is a member of a protected class by virtue of his being a Pakistani national of East Indian origin. Furthermore, it is clear that plaintiff's termination was an adverse employment action. Despite establishing the first two elements of a prima facie discrimination case, plaintiff has failed to raise facts that reflect circumstances giving rise to an inference of discrimination.  The facts pled indicate that plaintiff was not terminated as a result of his race or national origin. Instead, the facts indicate that Provident terminated plaintiff for several legitimate, non-discriminatory reasons, including a long record of poor work performance, insubordination, committing a major auditing error, failing to grasp and address his work performance issues, refusing to cooperate with Provident's attempt to investigate his broad and unspecific complaints, and submitting baseless allegations of discrimination. None of these reasons for termination create an inference that plaintiff's termination arose as a result of discrimination.

Even if plaintiff's discrimination claim were to move beyond the prima facie case step of the McDonnell Douglas burden shifting scheme, the reasons for terminating plaintiff articulated by Provident in his notice of termination—including the aforementioned long record of poor work performance, insubordination, committing a major auditing error, failing to grasp and address his work performance issues, refusing to cooperate with Provident's attempt to investigate his broad and unspecific complaints, and making baseless allegations of discrimination—are all legitimate and non-discriminatory. Plaintiff is unable to meet his ultimate

burden of demonstrating that the proffered reasons for termination are pretextual by simply disagreeing with the evaluations of his supervisors because it is the supervisors' perception of the employee's performance that is relevant in determinations of pretext. Kelley v. Goodyear Tire & Rubber Co., 220 F.3d 1174, 1177-78 (10th Cir. 2000). A plaintiff's "opinions about the fairness or accuracy of . . . evaluations is not evidence of pretext." Bullington v. United Airlines, Inc., 186 F.3d 1301, 1318 (10th Cir. 1999). Therefore, Plaintiff cannot ultimately meet the necessary burden to support a claim that his termination was discriminatory under a disparate treatment theory.

### 2. Plaintiff fails to Establish a Prima Facie Case of Discrimination Based on the Remaining Alleged Acts

Plaintiff is unable to establish a prima facie case of discrimination under a disparate treatment theory based on the remainder of Provident's alleged actions. Aside from the termination, which, as demonstrated above, cannot support a claim for discrimination under a disparate treatment theory, none of the remaining alleged harassing conduct—reprimands about plaintiff's performance and misconduct, ignoring a complaint of wrist pain, and three conversations, which plaintiff felt were racial in nature—constitute adverse employment action. In order for an employment action to be adverse, it must include a significant change in employment status such as hiring, firing, failure to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. Piercy v. Maketa, 480 F.3d 1992, 1203 (10th Cir. 2007). Aside from his termination, plaintiff has raised no alleged actions that can be considered adverse employment actions for purposes of establishing a prima facie discrimination claim.

Plaintiff asks the court to impermissibly expand the scope of the definition of an adverse employment action citing Sanchez v. Denver Pub. Sch. 164 F.3d 527, 532 (10th Cir. 1998). Sanchez states that the "Tenth Circuit liberally defines the phrase 'adverse employment action'" and that the circuit takes a "'case-by-case approach,' examining the unique factors relevant to the situation at hand." Id. (citations omitted). Plaintiff further argues that the term "adverse employment action" can encompass acts that carry "a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects." See Hillig v. Rumsfeld, 381 F.3d 1028, 1032 (10th Cir. 2004). However, plaintiff offers no case law to indicate that the term "adverse employment action" is so broad as to include such actions as reprimands about performance and misconduct, ignoring a complaint of wrist pain, and conversations, which have little or no connection to plaintiff's race or national origin. Even when applying the term liberally, these actions fail to rise to the level of creating a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects. As a result, plaintiff cannot meet the burden of establishing a prima facie case for discrimination based on disparate treatment based on Provident's remaining actions (setting aside Plaintiff's termination) because the remaining actions do not constitute adverse employment action.

As a result, Provident's motion for summary judgment should be granted as to the disparate treatment claim.

## III. RETALIATION

"Under 42 U.S.C. § 2000e-3(a), it is unlawful for an employer to discriminate against an employee 'because he has opposed any practice made unlawful employment practice' by Title VII." Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 550 (10th Cir. 1999). Therefore, "to prevail

14

on a retaliatory discharge claim, a plaintiff must establish that the decision to terminate [him] resulted from a retaliatory animus" following plaintiff's opposition to some unlawful employment practice. Id. A plaintiff may prove that his termination resulted from a retaliatory animus in one of two ways: (1) directly or (2) indirectly under the McDonell Douglas burden shifting framework. Id. The court finds as a matter of law that the plaintiff is unable to prove that his termination was the result of a retaliatory animus directly or indirectly.

### A. Plaintiff Fails to Directly Prove Retaliatory Motive

To prevail on a retaliatory discharge claim by the direct evidence method, a plaintiff must use direct or circumstantial evidence that "retaliation [for plaintiff's opposition to unlawful employment practices] played a motivating part in the employment decision at issue." Fye v. Oklahoma Corp. Com'n, 516 F.3d 1217, 1226 (10th Cir. 2008). Once the plaintiff "proves that retaliatory animus was a motivating factor, the burden of persuasion shifts to the defendant to prove that it would have taken the same action absent the retaliatory motive." Id. at 1225.

Plaintiff argues that the content of his discharge letter provides direct evidence of a retaliatory animus for plaintiff's allegations of discrimination as a motivating factor in plaintiff's discharge. Plaintiff relies on the portion of the letter from Provident which states, "we have determined you have filed a false and baseless claim alleging very serious violations of company policy and law and we are terminating your employment effective May 5th, 2008 for violation of company ethics." (Def.'s Mot. for Summ. J., Exh. 21, Discharge Notices at 3.) However, a termination notice that raises the issue of a plaintiff's unsubstantiated allegations of discrimination in conjunction with other substantial reasons for termination is not direct evidence of retaliation. Manaway v. Medical Center of Southeast Texas, 430 Fed. Appx. 317,

15

324 (5th Cir. 2011). Plaintiffs allegations, at the time of his discharge, were unsubstantiated. They had been alleged in a conclusory email to the president of Provident that was devoid of any specific allegations, dates, or witnesses, all of which are required by Provident's general harassment reporting protocol. Plaintiff's refusal to cooperate with Provident's prompt investigation into his allegations lent further credence to Provident's determination that plaintiff had submitted baseless allegations. Provident also included a number of other reasons for terminating plaintiff's employment in its discharge letter. The discharge letter states that plaintiff had "recently been given appropriate guidance by [his] supervisor for declining productivity and quality of work in production and a serious audit exception which could be termination offenses." (Def.'s Mot. for Summ. J., Exh. 21, Discharge Notices at 3.) The letter also mentioned plaintiff's reprimand for "insubordination for disregarding the directive of executive management during" the conference call with Ms. Pica. Thus, the discharge letter's reference to plaintiff's unsubstantiated allegations of discrimination in conjunction with several other substantial reasons for plaintiff's discharge is not direct evidence of retaliation.

Plaintiff also argues that the close temporal proximity between his original email complaining of discrimination to the president of Provident and his termination serves as further direct evidence of a retaliatory animus motivating his termination. (Pl.'s Mem. in Opp'n to Mot. for Summ. J. at 57 (citing Medlock, 164 F.3d at 550).) However, as discussed above, plaintiff's claims of discrimination were unsubstantiated. Several circuits have held that engaging in protected activity such as complaining of discriminatory behavior shortly before being terminated does not immunize an employee from being disciplined or terminated for workplace behavior. Bernier v. Morningstar, Inc., 495 F.3d 369, 376 (7th Cir. 2007); Alvarez v. Royal Atl.

Developers, Inc., 610 F.3d 1253, 1270 (11th Cir. 2010) (stating, "anti-retaliation provisions do not allow employees who are already on thin ice to insulate themselves against termination or discipline by preemptively making a discrimination complaint"); Smith v. Ashland, Inc., 250 F.3d 1167, 1174 (8th Cir. 2001) (holding that Title VII protection from retaliation does not insulate an employee from the consequences of inadequate work performance). The close temporal proximity between plaintiff's discharge and plaintiff's original allegations of discrimination is overshadowed by the facts that plaintiff was already on the verge of being discharged and that his allegations were determined to be baseless.

Even if plaintiff were able to marshal direct evidence of a retaliatory motive, plaintiff's discharge letter indicates that Provident still would have terminated plaintiff absent the alleged retaliatory motive. Fye, 516 F.3d at 1226. When the termination of plaintiff's employment is viewed in light of plaintiff's employment record, and when the discharge letter is read in its entirety, it is clear that plaintiff could and would have been discharged even without the alleged retaliatory animus. Therefore, as a matter of law, plaintiff cannot directly prove that his discharge was retaliatory.

### B. Plaintiff Fails to Indirectly Prove Retaliatory Motive

If a "plaintiff is unable to directly establish that retaliation played a motivating part in the employment decision at issue, [he] may rely on the...three-part McDonnell Douglas framework to prove that the employer's proffered reason for its decision is a pretext for retaliation." Fye v. Oklahoma Corp. Com'n, 516 F.3d 1217, 1225 (10th Cir. 2008). In order to prevail on a retaliatory discharge claim indirectly under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case that "(1) [he] engaged in protected opposition to Title VII

discrimination, (2) [he] suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action." Id. at 1227. The defendant must then proffer a legitimate, non-retaliatory reason for the plaintiff's termination. Id. at 1228. The plaintiff then bears the burden of demonstrating that the proffered explanation is a pretext for retaliation. Id. To show pretext, a plaintiff must "produce evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Id. (quoting Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1203 (10th Cir. 2006)).

      Plaintiff, as a matter of law, is unable to establish a prima facie case of retaliatory discharge. First, plaintiff's vague complaint to Provident's president alleging discrimination and plaintiff's refusal to cooperate with Provident's investigation into his complaint suggest that plaintiff was not engaging in protected opposition to Title VII discrimination, but was rather seeking to impermissibly insulate himself from impending termination. See Griffith v. City of Des Moines, 387 F.3d 733, 738 (8th Cir. 2004) (stating that, "complaining of discrimination in response to a charge of workplace misconduct is an abuse of the anti-retaliation remedy"); see also Bernier v. Morningstar, Inc., 495 F.3d 369, 376 (7th Cir. 2007); Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1270 (11th Cir. 2010); Smith v. Ashland, Inc., 250 F.3d 1167, 1174 (8th Cir. 2001) Therefore, plaintiff fails to meet the first requirement necessary to establish a prima facie complaint.

      Because plaintiff's termination was an adverse employment action, plaintiff does meet

the second requirement necessary to establish a prima facie retaliatory discharge complaint. However, plaintiff fails to meet the third requirement of a prima facie case since he cannot show that there is a causal connection between his discrimination complaint to Provident and the termination of his employment. Plaintiff argues that when the temporal proximity of protected behavior and the allegedly retaliatory conduct is very close, it creates an inference of causation so strong that it can establish causation without any additional supporting evidence. (Pl.'s Mot. in Opp'n to Mot. for Summ. J. at 60.) Plaintiff relies on cases such as Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999) which states that, "a one and one-half month period between protected activity and adverse action may, by itself, establish causation." However, where, as here, the plaintiff was already near termination, and abused the anti-discrimination statutes to insulate himself against the consequences of his poor performance, temporal proximity cannot establish causation. Plaintiff also argues that the contents of the discharge letter suggest that plaintiff's complaint was the reason for his termination. However, as discussed above, plaintiff was not terminated for making allegations of discrimination. Rather, he was discharged for a litany of reasons culminating in his refusal to follow established procedures for lodging discrimination complaints and for filing a complaint that was ultimately held to be baseless. Therefore, the discharge letter does not indicate a causal link between a legitimate allegation of discrimination and the termination of plaintiff's employment.

The plaintiff therefore, as a matter of law, is unable to establish a prima facie case of retaliatory discharge. However, even if plaintiff were considered to have established a prima facie case, it is clear from the number of other reasons listed in the discharge letter that Provident had multiple non-retaliatory reasons to terminate plaintiff's employment. Plaintiff, as a matter of

law, is unable to show that these reasons (poor work performance, insubordination, and the serious auditing error) are so fraught with "weaknesses, implausibilities, inconsistences, incoherencies, or contradictions...that a reasonable factfinder could rationally find them unworthy of credence." Fye, 516 F.3d at 1228.

Therefore as a matter of law, plaintiff is unable to defend his retaliatory discharge claim against summary judgment through direct or indirect proof. As are result, Provident's motion for summary judgment should be granted as to the retaliation claim.

## CONCLUSION

For the foregoing reasons, Provident's motion for summary judgment is GRANTED in its entirety. Consequently, plaintiff's complaint is DISMISSED.

IT IS SO ORDERED

DATED this 5th day of August, 2013.

_____

Dee Benson

United States District Judge